PEARNE *v.* COAL CREEK M. & M. COMPANY.

(*Knoxville.* October 29, 1891.)

1. DEEDS. *Reserving minerals.*

Deed for land containing reservation of "the minerals of the precious kinds," passes stone-coal in the bowels of the earth.

2. SAME. *Conveying minerals.*

Deed describing tract of land and conveying "three-fourths of the land and one-half the stone-coal of the whole tract, ❋ ❋ ❋ ❋ with its appurtenances, except the minerals of all the precious kinds," passes one-half the stone-coal in the tract and three-fourths of all other minerals not of "the precious kinds."

3. RIGHT OF WAY. *State's grantee has not by necessity.*

Right of way cannot exist by necessity in any case in favor of the State's grantee of lands over other adjoining vacant lands held by the State.

4. SAME. *By necessity exists, when. Example.*

M. & S. conveyed their 2,000-acre tract of land by three successive deeds, viz.: (1) 200 acres to Bullock, (2) 200 acres adjoining to Diggs, and (3) the residue to Birdseye. There was no practicable route to and from the Diggs tract except over either the Birdseye portion of the 2,000-acre tract or over other adjoining lands belonging to third persons. The latter was the more direct and convenient and least expensive route.

*Held:* A right of way by necessity exists in favor of the Diggs tract over the Birdseye portion of the 2,000-acre tract, but not over other adjoining lands.

Cases cited: Rightsell *v.* Hale, *ante,* p. 556; 57 Am. Dec., 760; 64 Am. Dec., 76; 35 Am. Dec , 302; *Id.,* 464; 85 Am. Dec., 675; 36 Am. Rep., 415, 421.

5. SAME. *Same.*

The grant of the minerals in a tract of land carries, by implication, a right of way over the land to mine and remove the minerals.

Case cited: 14 Am. Rep., 332.

6. SAME. *Same.* *Over the surface.*

The right of way by necessity is always one over the surface of the servient estate.

7. SAME. *Same.* *Nature and extent of way.*

The way by necessity should be laid out and established in such manner as to reasonably subserve the necessities of the dominant estate and not unreasonably injure the servient estate. The way should afford facilities for enjoyment not only of the surface, but of the minerals of the dominant estate.

---

## FROM ANDERSON.

---

Appeal from Chancery Court of Anderson County. H. R. GIBSON, Ch.

J. A. FOWLER and ———— ROBERTS for Pearne.

LUCKY & SANFORD for Company.

CALDWELL, J. This is a bill to remove an alleged cloud from the title to certain mineral interests in land, and to establish a right of way over and under the surface of adjacent land for the removal of the minerals.

Defendant, by answer, denied that complainant was entitled to any relief at all. On final hearing the Chancellor granted the prayer of the bill in part and refused it in part. Both parties appealed specially.

In 1837 the State granted to Moore & Spessard a tract of land containing two thousand acres, of which they conveyed two hundred acres to Bullock and subsequently two hundred acres to Diggs. The conveyance to Diggs was made in 1855. It excepted and reserved to the grantors " the minerals of all the precious kinds."

In 1859 Diggs conveyed to Vowell an undivided three-fourths of his two hundred-acre tract, " and one-half of the stone-coal of the whole tract," with its appurtenances, " except the minerals of all the precious kinds," which the grantor reserved to himself.

Thereafter, in 1868, Vowell conveyed to Pearne, the complainant, " one-half the coal and minerals " in the said two hundred acres, " except the minerals of all the precious kinds."

Pearne brought this bill to assert, protect, and make available his right and title under the last named deed.

The conflicting claim of the defendant arises in a manner now to be stated. In 1859 Moore & Spessard conveyed to Birdseye the residue of their two thousand acres grant; and, by the same deed, undertook to convey to him also " the minerals on " the four hundred acres previously sold to Bullock and Diggs.

Through several mesne conveyances the Coal Creek Mining and Manufacturing Company, the defendant, in 1872, acquired Birdseye's title, by virtue of which it claims to own all the minerals in the Diggs two hundred acres.

Complainant alleged that this claim was a cloud upon his title. The Chancellor so adjudged, and, by his decree, canceled the deed to that extent. This part of the decree the defendant assigns as error.

The Chancellor was right. The deed to Diggs, in 1855, passed to him full title to the land, " except the minerals of all the precious kinds;" and the later deed to Birdseye, though purporting and intended to pass title to all the minerals, was effective only as to "the minerals of all the precious kinds." Moore & Spessard reserved nothing else in their deed to Diggs, and consequently could pass nothing else to Birdseye, a subsequent vendee. The recital in their deed to Birdseye that they had not sold or conveyed " the minerals" to Diggs did not change the real facts of the transaction, and will not be considered to impair the title of Diggs and those claiming under him. A vendor may not prejudice the title of his vendee by subsequent statements against it; and much less can he divest an interest which he has conveyed, by a recital in a subsequent deed that he did not convey it.

It is true, as argued, that the language of the reservation is unusual, and cannot be said to have

a technical meaning; yet we see no reason in that for the rejection of the word "*precious*," or for substituting in its place the word "*various*," so as to destroy the natural import of the words used and make the reservation include *all* minerals. It is possible that the Register, in transcribing the original deed, may have written the word *precious* erroneously for the word *various*, thereby changing the reservation from "the minerals of all the *various* kinds" to "the minerals of all the *precious* kinds;" but there is absolutely no proof that such was the fact. The Court cannot *infer* that such mistake was made. The loss of the original deed being shown, the certified copy is presumed to be strictly correct in the absence of proof to the contrary.

The Chancellor adjudged that complainant's deed gave him title to one-half of *all the minerals* in the Diggs tract of land, except those of "the precious kinds." The defendant assigns error on this part of the decree, and insists that, at most, complainant has title to one-half of the stone-coal only, and that the title to all the other minerals not "of the precious kinds" is outstanding.

The solution of this question depends upon a construction of certain descriptive language in the conveyances under and through which complainant asserts title. It has already been seen that Diggs received title to all the minerals except those of "the precious kinds." He conveyed to Vowell by metes and bounds "a certain tract or parcel of

land containing two hundred acres, more or less, three-fourths of the land and one-half of the stone-coal of the whole tract, * * * with its appurtenances, except the minerals of all the precious kinds." Manifestly this deed would have passed three-fourths of the two hundred acres of land, surface and minerals, but for the limitation and exception as to the latter. Hence, it will be held to have passed every thing not excluded by such limitation and exception. The exception was of minerals of "the precious kinds" only, and the stone-coal conveyed was limited to one-half that contained in the whole tract. Nothing was said about the other minerals, consequently they passed with the land as a part of it. This would not have been so, but the result would have been as contended by the defendant's counsel had the conveyance been of three-fourths of the *surface* instead of three-fourths of the *land*. That would have excluded all minerals except those expressly included.

Vowell conveyed to complainant "one-half the coal and minerals" in the two hundred acres of land, "except the minerals of all the precious kinds," which were reserved. This deed needs no construction. Its terms plainly give complainant title not only to one-half the stone-coal, but also to one-half of all other minerals in the land except those of "the precious kinds." The decree on this point is correct.

Passing from defendant's assignment of errors,

complainant's objections to other parts of the decree will be stated and considered.

In 1848 the State granted to Richmond 5,000 acres of land, and to Wiley another 5,000 acres. The two tracts adjoined each other on one side, and together they embraced within their boundaries the whole of the 2,000 acres granted to Moore & Spessard eleven years before. Coal Creek Mining & Manufacturing Company acquired title to both the Richmond and the Wiley tracts at or about the same time it became owner of Birdseye's title under Moore & Spessard. Thus, the defendant became owner of lands lying on three sides of the Diggs tract, and immediately adjoining it. Bullock's 200 acres bounds it on the other side.

The relative positions of the three grants, and of the Bullock and Diggs tracts, are indicated by the following diagram:

The Diggs tract is situated near the top of

40—6 P

Butt Mountain, a spur of the Cumberland Mountains, in Anderson County. The coal in it is about 600 feet below the surface, with no frontage on the particular tract through which it can be removed. For this reason, and because his coal cannot, at present, be profitably mined through perpendicular shafts, complainant insists that he is entitled to a way of necessity over and through the adjacent lands of the defendant for the purposes both of mining and transportation; and he seeks to have the Court declare his right to such a way.

The record discloses the fact that the most convenient way for complainant to remove his coal would be over and under the Wiley tract. That would be the most direct route to a railway on defendant's land, and the least expensive to complainant. In fact, the defendant has opened a horizontal way, for its own mining purposes, in the Wiley tract, up to, or near, the line of the Diggs tract, and in the same vein of coal which complainant desires to work; and the insistence is that complainant has a legal right to remove his minerals through that way.

The prayer of the bill is, substantially, that complainant be given the most practicable way, whether over and through the Birdseye part of the Moore & Spessard grant, or over and through the Wiley tract.

The Chancellor held him entitled to a reasonable *surface* way in the former, and denied him any way at all in the latter.

Complainant assigns error on the refusal to grant him a reasonable way over and through the Wiley tract; and the contention in support of that assignment is that the State impliedly granted such a way to Moore & Spessard, and their successors in title, by her grant of the two thousand acres of land to them, she, at the time, owning all the surrounding lands. This contention cannot be sustained.

A right of way over the grantor's land may arise in several aspects; as, where one man sells to another land wholly surrounded by other lands which he retains, or where the parcel sold is surrounded partly by that retained and partly by that of a stranger, over which there is no right of access. The way in such cases is a necessary incident to the grant, and without it the grant itself would be useless. The necessity of the case raises an implication that the parties intended that the right of way should pass with the grant, though not expressed therein. 3 Kent, *420, 421; Washburne's Easements and Servitudes (4th Ed.), 258; 57 Am. Dec., 760, note; *Brigham* v. *Smith*, 64 Am. Dec., 76; *Nichols* v. *Luce*, 35 Am. Dec., 302; *Cooper* v. *Maupin*, 35 Am. Dec., 464, note; *Rightsell* v. *Hale*, *ante*, *p.* 556; *Pettingill* v. *Porter*, 85 Am. Dec., 675, note; 36 Am. R., 415, 421.

This is a doctrine well recognized by all the Courts, but it has no application to the State in the grant of her unsettled lands. By public statutes she provides for the establishment and main-

tenance of public roads, penetrating every neigh-
borhood and sufficiently numerous to meet the
general wants of her citizens. Beyond this, and
the full protection of the title conferred, she owes
her grantees, as such, no duty or obligation. It
would be ruinous to establish the precedent con-
tended for, since by it every grantee from the
earliest history of the State, and those who suc-
ceed to his title, would have an implied right
of way over all surrounding and adjacent lands
held under junior grants, even to the utmost lim-
its of the State.

The Chancellor was clearly right, therefore, in
refusing the desired way either over or through
the Wiley tract.

Complainant further assigns error on the decree
because he was not allowed a way *under*, as well
as *over*, the surface of the other tract.

Under the doctrine just stated, the deed from
Moore & Spessard to Diggs carried with it, by
implication, a right of way over the residue of
the original tract in favor of Diggs, he having
no other means of access; and that right of way
passed to those succeeding to his title, the same
necessity continuing and the right not being ex-
pressly cut off by any subsequent conveyance. As
to that right of way, the Diggs tract is still the
dominant and the Birdseye tract the servient es-
tate, notwithstanding the several deeds intervening
between the severance of the heritage and the
present time.

This right of way is raised by implication from the contract of the parties because necessary to the use and enjoyment of the principal thing granted; therefore, when that thing includes both the surface of the land and the minerals contained therein, the way must be for the use and enjoyment of both the surface and the minerals. It does not follow, however, that there shall be two ways—one on the surface and the other under the surface of the servient estate. On the contrary, there can be but one way, and that an overland way. In some cases, as in the one before us, it may happen that the minerals can be more conveniently or profitably removed and put upon the market by an underground than by an overland way; yet that fact will not authorize the implication that the parties intended that a right to the underground way should pass with the deed, which is silent on the subject. The question is not one of convenience, but of necessity. If the necessity exist, then the grantee may have the way *over* the grantor's land, and, being thus entitled to the way, he may have it at a place convenient for him. The overland way is one of necessity, the underground way is not; hence the former, not the latter, is the one the claimant may have.

The fact that the party who seeks the establishment of the way in this case owns only the minerals in the dominant estate does not change the rule. It gives him no higher or other rights than he would have if he owned both surface and

minerals. By his deed he has an express grant of all mining privileges on and through the surface; and, if it were not so expressed in his deed, the grant of the minerals would carry with it, by implication, a right to the reasonable use and enjoyment of the surface for all necessary mining purposes. *Marrine* v. *Brewster Iron Mining Company*, 55 N. Y., — (S. C., 14 Am. R., 332); 15 Am. & Eng. Ency. of Law, 584 and 588.

The desired way under the surface of the Birdseye tract was properly refused.

Finally, the decree recites that the way over the Birdseye tract to which complainant is entitled, shall " be laid out in the place and manner most convenient and favorable for the mining and removal of his said coal and other minerals, at the time the same shall be done."

The defendant assigns error on this part of the decree for various reasons.

It is shown in the proof that Diggs and Vowell together have resided upon this 200 acres of land for more than thirty years. Nothing is disclosed, however, as to the route or manner of their ingress or egress. If they have appropriated a way over the Birdseye tract, then complainant's way for the removal of his minerals should be along the same line; and if the way, as used by them, is not reasonably sufficient for his purposes, it may be made so by him, due regard for the interests of the defendant being observed. He cannot be required to accept a way insufficient for

mining purposes, merely for the reason that the way established by the owners of the surface may be all that they have desired or claimed. Their establishment of a way does not conclude him, unless it will answer his purpose reasonably.

The right to the way is implied in favor of the land, as land, including surface and minerals; hence, the way should be sufficient for the reasonable enjoyment of both.

If it should appear, by a reference to the Master or by agreement of the parties, that the owners of the surface have, in fact, established no way over the Birdseye tract, then the complainant may establish one, under dirction of the Chancellor, in such place and manner as may be necessary for the transportation of his minerals, and as may not result in unreasonable detriment to the servient estate.

Had the deed to Diggs defined and limited the way, in that case the beneficiaries would be bound by the express terms of the grant, whether such way should turn out to be sufficient for their purposes or not. *Haskell* v. *Wright*, 23 N. J. Eq., 390. But, since the way results by implication from the necessity of the case, it may be made to conform to the reasonably necessary demands of the owners, due regard being had, at the same time, for the rights of those owning the land over which it passes.

The decree will be modified as here indicated, otherwise affirmed, and the cause remanded for the

Pearne *v.* Coal Creek M. & M. Company.

location and establishment of said way, as soon as practicable, under the orders of the Chancellor, and in conformity with this opinion.

All the costs will be paid equally by complainant and defendant.