## Hooks & Hines v. J. W. Pafford et al.

Decided February 13, 1904.

**1.—Witness—Bias—Collateral Matter.**

Where a witness for plaintiff admits on cross-examination that he is a special friend of plaintiff, he can not ostensibly for the purpose of showing such bias, be interrogated as to a certain collateral matter of a character calculated to cast discredit on plaintiff.

**2.—Sale in Fraud of Creditors—Evidence—Reputation.**

Where plaintiffs purchased goods of M. which were afterwards attached by creditors of M., on the ground that M. was insolvent and the sale to plaintiffs made in fraud of creditors, and plaintiffs sued the sheriff for wrongful attachment and conversion of the goods, the good faith of plaintiffs in purchasing the goods was an issue in the case, and it was competent for them to show that M.'s reputation for paying his debts was good at the time and place of their purchase.

**3.—Same—Damages—Attachment.**

Where the sheriff levied on the goods while in plaintiffs' storehouse and kept the house closed for two months, it was error for the charge to make plaintiffs' right to recover the rental value of the storehouse for such time dependent on their having no knowledge of the fraudulent intent of M. in selling them the goods, as the sheriff was in no event entitled to keep the house closed for any longer time than was necessary to inventory the goods.

**4.—Same—Fraud—Putting Upon Inquiry—Suspicion.**

To affect a purchaser of goods with notice of an intent on the seller's part to defraud his creditors, there must be something more than the possession of facts such as would be calculated to create a suspicion of the seller's fraud. In order to be charged with notice, the purchaser must be in possession of facts and circumstances such as would put an ordinarily prudent person on inquiry which, by the use of proper diligence on his part, would lead to a knowledge of such intention.

**5.—Same—Property Not Sold by Debtor.**

Where, after plaintiffs had bought the goods from M. and taken possession thereof, certain coal was delivered to them which M. had ordered, and they paid the owner of the coal therefor, and the coal was attached and converted by the sheriff acting in behalf of M.'s creditors, plaintiffs were entitled to recover the value of the coal.

**6.—Same—Value of License Lost Through Levy.**

Where plaintiffs' storehouse was kept closed by the sheriff for two months after the levy, and plaintiffs thereby deprived for that time of the value of their license as retail liquor dealers, they were entitled to recover the value of the license for such time, and also the value of clerks' hire for that period which they were compelled to pay.

Appeal from the District Court of Collin. Tried below before Hon. Rice Maxey.

*Garrett & Smith,* for appellants.

*Abernathy & Mungum,* for appellees.

RAINEY, Chief Justice.—On March 17, 1900, appellants purchased of C. H. Miller a certain stock of merchandise, consisting of liquors, cigars, etc., and took possession of same. About one week thereafter appellee, sheriff of Collin County, by his deputy, seized said property by virtue of certain writs of attachments issued in suits brought by Miller's creditors against him. The goods nor the proceeds were ever returned to appellants. The house in which the goods were situated and

which had been rented by appellants from one Seay was also taken possession of by said deputy, and appellants were deprived of the possession and use thereof for about two months.

This suit was brought by appellants against Pafford, sheriff, and the sureties on his official bond, to recover for the value of the goods, the use of the house, and the value of plaintiffs' retail liquor dealer's license, which it was alleged were seized and never returned to plaintiffs, also to recover clerks' hire plaintiffs were compelled to pay their clerks during the time said house was so held. The defendants defended on the ground that the sale to plaintiffs was made in fraud of creditors and therefore void. On hearing judgment was rendered for defendants.

The appellants complain of the action of the court in permitting the defendants, on cross-examination of plaintiffs' witness, Sam McKinney, to prove by said witness that he was on the train with Hooks at the time an assault was made on one Dial. The assault was in no way pertinent to any inquiry in the case, and the only purpose this testimony could subserve was to discredit the said witness by showing his friendship for plaintiff Hooks. Witness had stated in reply to defendants' inquiry, that he was a special friend of Hooks, and the fact of his being present at the time of the assault was immaterial. We understand that the bias, prejudice, interest, etc., of a witness may be shown by proof of collateral matter, but where the witness admits such state, then the proof of collateral matter to show such state becomes immaterial.

It is insisted by appellees that said testimony was harmless. Possibly so; considered abstractly it would seem so. But it appears from the bill of exceptions that plaintiffs' counsel, when objecting to said testimony, stated to the court, in effect, that the assault had been published in every paper in the county; that there had been various trials in the courts of Collin and Hunt counties and appeals to the Court of Criminal Appeals, and the matter had been republished; that it was a matter of general knowledge throughout Collin County and was an unprovoked assault. Taking this statement as true, we are unable to say that said testimony was harmless.

It was also error for the court to exclude evidence offered by plaintiffs to show that the reputation of Miller in McKinney for paying his debts was good. The good faith of plaintiffs in purchasing the goods was an issue, and there was evidence to the effect that Miller was insolvent. Whether plaintiffs knew, or were put upon inquiry, as to such insolvency, was a material inquiry, and the reputation of Miller in McKinney for paying his debts was a circumstance pertinent for the jury to consider. Mr. Greenleaf says: "Where purchaser's knowledge or ignorance in good faith of the transferrer's insolvency is in issue, the transferrer's reputation as to solvency or insolvency, if within the same community, is admissible to indicate the purchaser's state of mind." Sec. 14p, p. 68.

On the issue of the right of plaintiffs to recover for the rent of the house, the court in his charge made the recovery depend upon whether

or not the plaintiffs knew, or were put upon inquiry, of Miller's insolvency, his intention and the fraudulent transaction. This was error. The right to recover did not depend upon the character of the transaction between plaintiffs and Miller. If plaintiffs had rented the house from Seay, and the deputy sheriff, in levying the writs of attachment, took possession of the house and retained possession thereof until he disposed of the goods, then the plaintiffs would be entitled to the rents for that time. Of course holding the house for a reasonably sufficient time to seize and make an inventory of the goods would create no liability. A day or so would doubtless have been sufficient for this purpose in this instance.

The third paragraph of the court's charge is as follows: "If a purchaser be ignorant of the insolvency of a seller and has no reason to believe such to be his condition and does not know or have any knowledge of such facts as would be calculated to create a suspicion that the purpose of the seller is to hinder, delay or defraud his creditors, and the purchaser pay a valuable consideration for the property sold, then the sale is valid, whatever may have been the intention of the seller, and although creditors of the seller may be defrauded, hindered or delayed in the collection of their claims."

In the eighth paragraph of the charge the court again tells the jury that the burden was on the defendants to show that the sale of the property was made with the intent on the part of Miller to hinder, delay or defraud his creditors, and the plaintiffs knew of such intent, or knew some facts or circumstances each as would have excited in the mind of an ordinarily prudent man a *suspicion* of such intent.

Appellant complain of that portion of paragraph 3 which informs the jury that without "knowledge of such facts as would be calculated to create a suspicion that the purpose of the seller is to hinder, delay or defraud creditors," etc., the sale would be valid. To affect a purchaser with notice there must be something more than the possession of "facts such as would be calculated to create a suspicion" of the seller's intent. If he did not know of the intent, then, to constitute notice, he must be in possession of facts and circumstances such as would put an ordinarily prudent person upon inquiry which, by the use of proper diligence on his part, would lead to a knowledge of such intention. A purchaser might be in possession of facts that would create a suspicion as to the seller's fraudulent intent, but which by the use of proper diligence would not lead to a knowledge of such intention. Of course if he knew facts which would excite the suspicion of a man of ordinary prudence and put him upon inquiry and by the use of diligence would discover the fraudulent intent, then he would be charged with notice. The charge was calculated to mislead in that it did not fully state the law, as indicated.

The court erred in refusing appellants' tenth requested instruction, which is as follows: "You are instructed that if you find and believe from the evidence that Miller had ordered the coal testified to in the

evidence, and that the same was delivered to Hooks & Hines after they had purchased the stock of goods in question and had taken possession of the stock of goods, and that the plaintiffs, Hooks & Hines, paid for the coal, then you are instructed that the plaintiffs are entitled to recover for the value of the coal as against the sheriff and the sureties upon his bond." This charge embraces a correct proposition of law, was applicable to the facts, and should have been given.

Appellants complain of the exclusion of testimony offered to prove the value of their State, county and municipal licenses as retail liquor dealers, which plaintiffs allege were lost to them by the illegal seizure of the goods, house, etc. We think this was competent evidence under the pleadings of plaintiffs. It was shown that the license had been transferred to plaintiffs by Miller, and under the law they were worthless to anyone else. If plaintiffs were bona fide purchasers of the goods, and the effect of the seizure of the goods was to render plaintiffs unable to carry on business under such license, then plaintiffs were entitled to recover the value of the license of which they were deprived by the wrongful levy. If, on the other hand, plaintiffs were not purchasers in good faith, then the goods were subject to the writs of attachment, and plaintiffs are not entitled to any damages resulting to them by reason of the levy on the goods. Or, if the holding of the house by the sheriff prevented plaintiffs from pursuing their business under said license, then they were entitled to recover the reasonable value to them of the license during the period the house was unlawfully detained.

There is testimony showing that no levy was made on the licenses and the deputy knew nothing of them. If this is true, the mere fact that the licenses were stuck up in the building during the time it was held by the sheriff would not entitle plaintiffs to damages.

The court also erred in excluding the value of clerks' hire that plaintiffs allege they were compelled to pay, etc. If the levy was unlawful and rendered plaintiffs unable to pursue business, or if the holding possession of the house rendered them unable to do so, and such illegal levy or such possession made it necessary for plaintiffs to pay clerks with whom they had contracted and it was unavoidable, then plaintiffs would be entitled to recover for the reasonable amount so paid. Plaintiffs specially alleged the loss of license and the payment of clerks' hire, and the right to recover therefor depends upon the testimony introduced under the law as above indicated.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*