STATE OF TEXAS V. BLACK BROTHERS ET AL.

No. 4056. Decided June 22, 1927.
(297 S. W., 213).

**1.—Statutory Navigable Streams—Riparian Owners.**

Owners of land bounded by a stream made a navigable one by statute (Rev. Stats., Art. 5302; Acts of 1837, p. 63) own to the water's edge only and have no title to the bed of the stream nor to minerals underlying it. The State and those claiming mineral rights in the bed of the stream under its authority could recover same against riparian proprietors interfering with mineral development therein. (Pp. 625, 626).

**2.—Disposition by State of Bed of Navigable Stream.**

The State as sovereign has power to determine the disposition to be made of the beds or channels of statutory navigable streams and its grant of the right to explore for and develop mineral production (oil and gas) therein does not impair any vested rights of riparian proprietors holding under its prior grants. (Pp. 625, 626).

**3.—Right of Way by Necessity.**

Caution is expressed as to the propriety of any extension of an implied right of way across the grantor's lands from the necessity therefor of access to the land granted beyond the limits fixed by the established course of decisions. It is better to let written contracts speak for themselves. Smith v. Stevens, 81 Texas, 460, 461. (Pp. 626, 627).

**4.—Same—Judgment.**

A judgment establishing a right of way by necessity over the lands of another should describe a definite easement, not a general right of way over any and all lands of the servient proprietor.    (Pp. 629, 630).

**5.—Same—Grants by State.**

The implied right of way by necessity is not applicable to grants of land by the State, which exercises the power to meet such necessities by establishing public roads over its own lands, and by condemnation and compensation over the lands of private proprietors.    (Pp. 627-629).

**6.—Same—Beds of Streams.**

The State, in reserving to itself title and control over the beds of streams, declared navigable by statute, will not be held to have created a right of way by necessity, in favor of itself or of those to whom it may grant the right to mine therein by permits to explore for and develop oil and gas production, over the lands of riparian proprietors to whom it grants lands bordering on such streams.    And this though no other means of access by the grantees of such permits may exist.    (Pp. 626-629).

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Travis County.

The State and others recovered a judgment against Black Bros. and others which, on defendants' appeal, was reversed and rendered (253 S. W., 576).    The State thereupon obtained writ of error.

*W. A. Keeling,* Attorney-General, and *C. W. Caves,* Assistant, for plaintiff in error.

In the absence of an express grant to the contrary, the State of Texas owns in fee simple, and in a proprietary sense, the bed of a natural stream in this State, whether navigable in fact or not, which retains an average width of thirty feet, even though, as sovereign, it may have granted at any time after June 12, 1837, without reservation other than that embodied in the statutes, the lands lying along and upon either side of such stream.    R. C. S., Arts. 5338 and 5339; Ch. 83, p. 58, Gen. Laws, Reg. Ses. 35th Leg; City of Austin v. Hall, 93 Texas, 591; Landry v. Robison, 110 Texas, 295; City of Galveston v. Menard, 23 Texas, 349; Baylor v. Tillebach, 49 S. W., 720, 722; State v. Pacific Guano Co., 22 S. Car., 84.

Having reserved and being the owner of the bed of a particular stream, the State is the owner of the petroleum oil and natural gas and other minerals within, upon and under same, and may, by its officers, agents, employees and those with whom it may contract with respect thereto, enter upon, use and occupy

such stream bed, or any part thereof, for the purpose of prospecting for and developing and mining such minerals.    Same authorities.

Where the suit is in trespass to try title and certain of those against whom the suit is brought expressly disclaim all right, title and interest in and to the land sued for, plaintiff is entitled to judgment against such defendants for the title to and possession of such land, and a judgment in such case vesting in such defendants, with others, the title to and possession of such land is unwarranted, and this, notwithstanding pleas of not guilty and general denial by such defendants.    Herring v. Swain, 84 Texas, 523, 19 S. W., 774; Tate v. Wyatt, 77 Texas, 492, 14 S. W., 25; Wooters v. Hall, 67 Texas, 513, 3 S. W., 725.

Where the State, after June 12, 1837, granted to private persons all the lands adjoining, lying upon, surrounding and enclosing the bed of a stream, or a portion of same, retaining an average width of thirty feet, and at the time of such grant, and ever thereafter, expressly retained by statute the title to the bed of such stream, and there was at the time the grants were made, and ever since has been, no means or way of access, to the bed of such stream, or to such portion of same otherwise than upon and over such granted lands, there was and is an implied reservation in the State to a way of necessity over and across such granted lands such as is necessary to the complete and unrestricted occupancy, use and enjoyment of such reserved area. Gulf, etc. Ry. Co. v. Rowland, 70 Texas, 298; Holman v. Patterson (Civ. App.) 78 S. W., 989; Alley v. Carlton, 29 Texas, 74.

*H. S. Garrett,* for defendants in error Black Bros.

We assert firmly that where the only common source of title is the sovereignty of the soil, the doctrine of a way of necessity has no application and that one seeking a road is relegated to the statutory provisions of the State providing for the establishment of highways. This identical question has been before two of the courts of this country, the Supreme Court of Tennessee in Pearne v. Cold Creek Mining & Mfg. Co., 18 S. W., 402, and the Federal Court in U. S. v. Rindge, 208 Fed., 611.

The large question which occurs is this: Where one obtains a mineral permit from the State of Texas to drill an oil well at a certain point in a river bed in this state, is he entitled, as a matter of law, to a thoroughfare, without condemnation, payment or compensation, judgment of the Commissioners Court or anything else, over all the lands in the county in which the

oil well is located, whether they are adjacent to the proposed oil well or not, and whether there is any unity of ownership between them and the lands which are adjacent or not? Indeed, may the person holding such permit simply consider he has the privilege to go over any and all land wherever located in order to reach the proposed oil well if, in his judgment, it is convenient for him to do so?

The State of Texas has provided by its statutes a comprehensive scheme by which roads and thoroughfares may be established for the benefit of her citizens. Under certain conditions first class roads may be established; under others, second class and yet under others third class roads. Indeed, these statutes are so comprehensive as to fit the needs of citizens under varying circumstances and no citizen can be deprived of at least a third class road provided he has a reasonable need therefor and proceeds in the proper manner to obtain it.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

The State of Texas, joined by R. C. Brewster and others, brought this suit in the District Court of Travis County, against A. A. Atkins, W. H. Atkins, John Robbins, Jack Black, John Black, Will Black, Black Bros., a partnership composed of the three last named persons, R. F. Brown, the Brown Oil Company, P. A. Chapman, Jr., N. A. Moore, and the Humble Oil & Refining Company.

This suit had a dual purpose. In the first place, under the averments of a petition in the statutory form for an action of trespass to try title, the plaintiffs sought to recover the title to, and possession of, a certain tract of land in Stephens County, which was a part of the bed of the Clear Fork of the Brazos River. In the second place, the plaintiffs sought to establish the rights of the co-plaintiffs of the State, as the holders of a valid permit from the State, to prospect for and produce oil and gas from said tract of land, and to enjoin the defendants from interfering with the exercise of such rights, and to secure a decree granting unto plaintiffs a way of necessity across lands of defendants.

As a basis for the relief sought by plaintiffs other than the recovery of the title to, and possession of, the tract of land sued for, it was alleged:

First: That on June 16, 1920, in compliance with Chapter 83, page 158, General Laws, Regular Session, Thirty-fifth Legislature, approved March 16, 1917, a permit numbered 7224 was issued to R. C. Brewster, to prospect for and develop petroleum

and natural gas upon and within said river bed area. That Brewster subsequently assigned his rights in so far as same related to a described part of said area to his co-plaintiff J. Neil Smith, who entered into a valid contract with the remaining co-plaintiffs, Inland Oil Company and others, for the drilling of certain wells thereon, at a point authorized by the Railroad Commission.

Second: "That the drilling of a well for oil and gas in a river bed is a very costly operation, much more costly than the drilling of a well on a flat and dry surface, and is attended with great trouble, labor and danger, that before the actual work of drilling can be commenced a concrete foundation must be built up from the bottom of the river bed to a point several feet above the surface of the water, that the river at the point of said location above described is 12 or 15 feet deep, that said assignees constructed at great expense and labor in said river at said location the form for the placing of the concrete therein; that said assignees and their employees while so engaged in the above work were threatened with physical violence and criminal prosecution by the above named defendants, and each of them, that defendant, A. A. Atkins, and other defendants, drove the said assignees of the State's permittee, and their employees, away from their work and from the above described lands, premises and area included within said Permit No. 7224, with loaded shot guns, and refused, and still now refuse, to permit said assignees or their employees, from continuing with the work of drilling a well for oil and gas at the above described location; that the said assignees, and their employees, fear that if they return to the work of so drilling said oil well, or attempt to do so, they will meet with bodily harm and injury from the said defendants, and each of them, and because of said above alleged threats and acts of the said defendants, and each of them, the said assignees find it impossible to secure workmen to work upon said above described area and proceed with the drilling of the aforesaid oil well, and consequently said land, premises and area above described will remain undeveloped for a long and, indefinite period of time."

Third: "That said River Bed, the title to which is in the State, subject to the rights of co-plaintiffs, is virtually a closed in area, surrounded on all sides by the private property of the adjoining land owners, previously granted to them and their predecessors in title, by the state, and especially is it true that said River Bed at this particular location above described is closed in on all sides by the property, and properties, of the defendants, and

each of them, and particularly by the property of defendants Atkins and Brown; that the plaintiff and its permittee, and his assigns, are entitled to a lawful and legal right of ingress and egress over the lands of the defendants and particularly the defendants Atkins and Brown, and each of them, as a way of necessity in order to go to and from and enter upon the land, premises and area described above in paragraph 2 of this petition, as the property of this plaintiff (subject to the rights of its co-plaintiffs herein); that the said defendants, and each of them, have refused and are still now refusing to permit the State of Texas or its permittee, and his assigns, from so entering upon and going through their (defendants') aforesaid adjoining properties to reach the above described land, premises and area owned by plaintiff as aforesaid; that no public road affords access to plaintiff's said land and defendants have refused to sell or lease to plaintiff or its permittees, or to grant by contract to plaintiff and its permittees any means of access over defendants said lands, to the land of plaintiff; that it is impossible to develop the said area of this plaintiff unless such right of ingress and egress be granted to plaintiff and its permittees, and his assigns, over the said adjoining lands of said defendants, and each of them."

The prayer of plaintiff's petition was: "Wherefore, plaintiff (joined herein as aforesaid by its co-plaintiffs) respectfully prays this court that an appropriate order be immediately entered granting said plaintiff a temporary injunction restraining the defendants, and each of them, their agents, officials, assignees, servants, employees or legal representatives, and each of them, from interfering, and attempting to interfere, in any way, manner or form, with the plaintiff and its permittee, and his assigns, their agents, assignees, servants, employees and legal representatives, and either of them, in the drilling of the aforesaid well for oil and gas at the above described Smith location, or in the drilling of any oil and gas well, or wells, in the above described land, premises and area embraced within said Permit No. 7224 and fully described above, and in the development of oil and gas on and under said property and area, from threatening and from running off said premises and area and from attacking said plaintiff and its permittee, and his assigns, their agents, servants, employees and legal representatives, and either of them, while on or about said premises from preventing or attempting to prevent in any way or manner said plaintiff and others above named, and each of them, from so drilling, or attempting to drill and from so developing or attempting to

develop said properties, and granting said plaintiff a temporary injunction forcing said defendants, and each of them, their agents, officials, assignees, servants, employees, or legal representatives, and each of them, to permit the plaintiff herein and its permittee, and his assigns, their agents, assigns, servants, employees and legal representatives, and either of them, to go through and over the property, or properties, adjoining said river bed area, in order to go to and from said river bed area and to and from said Smith oil well location, and to give them the right of ingress and egress thereover, and restraining said defendants, and each of them, their agents, officials, assigns, servants, employees, or legal representatives, and each of them, from interfering with or preventing, or attempting to interfere with or prevent, said parties, and each of them, from going through and over such adjoining property, or properties, in going to and from said river bed area and said Smith location in said river bed area, and from doing any and all of the above acts set forth in the third count of this petition; that defendants, and each of them, be cited to appear and answer this petition; that on final hearing hereof, said above prayed for injunction, or injunctions, be made perpetual, and that plaintiff and its co-plaintiffs herein have judgment against the defendants, and each of them, for the title and possession of the lands, premises and areas above described, and removing from the plaintiff's and its co-plaintiff's title the cloud cast upon it by the claims of the defendants, and each of them, and that plaintiff be adjudged to be the owner, subject to the rights of its permittee, and his assigns, and that they be adjudged to be the owners of their rights and title therein, of the said land, premises and area, free from the claims asserted by the defendants, and each of them, and of the petroleum, oil and natural gas, and other minerals, in and under the same; that a way of necessity be declared and established by the judgment of the court over the lands of defendants adjoining the property described in paragraph 2 hereof, and that a way of ingress and egress be decreed in favor of plaintiff; for writ of possession, and costs of suit, and for general and special relief."

Jack Black, John Black, and Will Black and Black Bros. filed an answer pleading a general denial and not guilty. These defendants plead specially: "That the said tracts of land owned by said defendants are not adjacent or contiguous to the alleged oil well or proposed location therefor by the plaintiffs or the State's alleged permittees or its assigns in the bed of the Clear Fork of the Brazos River, and no occasion exists for any high-

way, right-of-way, thoroughfare or way of necessity across the lands of these defendants, nor is it necessary to cross the lands of these defendants in order to reach said proposed oil well or location therefor in said stream." They further plead that to establish any highway or way of necessity upon their lands in behalf of plaintiffs, without compensation to them, would deprive them of their rights and property without due course of the law of the land and contrary to the guaranties of the State and Federal Constitutions.

A. A. Atkins plead a general denial and not guilty. By special plea he averred that the Clear Fork of the Brazos River retained an average width of more than thirty feet and was a navigable stream within the meaning of Article 5338 of the Revised Statutes, that the Act of the Thirty-fifth Legislature in so far as it purported to authorize the prospecting for and the developing of oil and gas in the beds of navigable streams was unconstitutional, and that to grant a way of necessity to plaintiffs across his land would deprive him of his property rights without compensation contrary to law and the Constitution, that he owned certain lands, particularly the Watkins Noble Survey adjacent to the River bed area sued for, and the title thereto emanated from the State long prior to the issuance of the oil and gas permit and prior to the passage of the Act of the Thirty-fifth Legislature, and he prayed that Permit No. 7224 be declared null and void.

R. F. Brown answered that he owned land bordering on the area sued for but disclaimed any right, title or interest in and to the area and all oil, gas and other minerals therein, except such riparian rights as may belong to him as the owner of riparian lands upon the stream. He further plead a general denial and specially that he had not refused to permit the plaintiffs to drill at the point designated in their petitions.

P. A. Chapman, Jr., and N. A. Moore disclaimed any interest in the river bed area except the right to take water from the stream for certain purposes and then plead a general denial and not guilty.

The Humble Oil and Refining Company disclaimed except as to its right to take water from the stream under a permit from the Board of Water Engineers and besides plead not guilty and for general relief.

The evidence seems to have established, without substantial controversy, that the Clear Fork of the Brazos River retained an average width of more than thirty feet since the adoption of the Act of 1837, and that the State's co-plaintiffs held such a

mineral permit as they had plead to the area described in their petition and that they desired to prospect and develop the oil and gas in such area, and that defendants owned riparian tracts of land, under patents issued after June 12, 1837, to tracts of land, some of which were contiguous to the area covered by the permit and the site of the proposed well, and some of which were remote therefrom.

The District Court rendered a judgment dismissing plaintiffs' suit as against defendants W. H. Atkins and John Robbins. Such judgment proceeded, as between the plaintiffs and the remaining defendants as follows: "And it further appearing to the court that the lands owned and claimed by the defendants entirely surround the portion of the river bed of the Clear Fork of the Brazos River at and near the point where the permittees of the State of Texas are preparing to drill an oil well, the point where said well is located being described as follows: (Here follows description of the point where the proposed oil well was to be drilled as designated by the said order of the Railroad Commission.) * * * And it appearing to the court that the plaintiff, the State of Texas, its agents, permittees and lessees, have no means of ingress and egress to or near said point where the site of said well is located except over the lands of defendants, the court is of the opinion and finds that plaintiff, the State of Texas, is entitled to a way of necessity over and across lands for the benefit of itself, its employees, agents, permittees and lessees.

"It is therefore ordered, adjudged and decreed by the court that the plaintiff, the State of Texas, have and recover judgment of the defendants, A. A. Atkins, Jack Black, John Black, Will Black, and the firm of Black Brothers, composed of the three individuals last named, and R. F. Brown, P. A. Chapman, Jr., N. A. Moore, and the Humble Oil and Refining Company, a private corporation, for the title and possession of the following described land, to-wit: (Then follows description by metes and bounds of the river bed area as described in the mineral permit.)

"It is further ordered, adjudged and decreed in accordance with the agreement of the parties hereto that the above described land and area covered by said mineral permit includes no more than the actual bed of said river lying between the first banks and does not embrace or include any portions of the patented lands contiguous thereto or fronting on or calling for said Clear Fork of the Brazos River as a boundary.

"It is further ordered, adjudged and decreed that the co-plaintiffs of the State of Texas recover judgment validating the mineral permit and that they, together with the State of

Texas, have the right under said permit to develop the river bed for oil and gas.

"It is further ordered, adjudged and decreed by the court that the plaintiff, the State of Texas, have an easement for the purpose of ingress and egress of its servants, agents and employees, permittees and lessees, including the co-plaintiffs herein and their assigns, over and across the lands of the defendants, and each of them, to and near to the point in said river bed where its permittees have located the site of an oil well hereinabove described for the purpose of prospecting for, drilling and operating oil and gas wells, or for other proper purposes reasonably necessary for the utilization of said area, provided, however, that such right of ingress and egress shall be exercised in such manner as not to unnecessarily injure such lands or unnecessarily interfere with the use thereof by defendants.  *  *  *

"It is further ordered, adjudged and decreed that this judgment shall in no way interfere with, jeopardize or be in bar of any riparian rights which any of the defendants herein, or their assignees, may have as riparian owners or proprietors of lands adjoining the river, in or to the waters of the Clear Fork of the Brazos River or the uses thereof, nor shall this judgment preclude the defendants, or either of them, or their assignees from hereafter asserting such rights, it being expressly decreed and and adjudged that any questions as to any riparian right of the defendants, or either of them herein, or their assignees, were and are not determined or adjudicated in this case."

Jack Black, John Black and Will Black, individually and composing the partnership of Black Bros., A. A. Atkins and R. F. Brown appealed.

The San Antonio Court of Civil Appeals reversed the judgment of the District Court and rendered judgment that plaintiffs take nothing by their suit and that *all* defendants, including those dismissed from the suit and also those who did not appeal, "be quieted in their title to (and) possession of the following described land," being the area sued for, and that the defendants "go hence without day" and recover all costs.  253 S. W., 576.

The State of Texas thereupon applied for and was granted a writ of error to review the judgment of the Court of Civil Appeals.

It does not admit of debate that the judgment of the Court of Civil Appeals is erroneous in so far as it proceeds to quiet title to the area sued for in the defendants who had filed no pleadings seeking any such relief, or who had not appealed, or

who had been dismissed from the suit in the trial court to their entire satisfaction.

We think, too, that under the pleadings, the agreement of the parties, and the uncontradicted evidence, the plaintiffs were entitled to judgment for the title to, and possession of, the premises described in plaintiffs' petition.

We are unable to agree with the Court of Civil Appeals that the Act of 1917 for the discovery and production of minerals in the channels of navigable rivers belonging to the State is void because repugnant to other statutes, even though such other statutes be the older.

This Court definitely determined in City of Austin v. Hall, 93 Texas, 597, that proprietors of riparian lands on a stream declared navigable by the Act of 1837 of the Congress of the Republic, under patents issued subsequent to the passage of the Act, had title only to the water line of the stream, since the State reserved the title to the bed of the stream. This decision has been uniformly approved in the subsequent opinions of the Supreme Court. Motl v. Boyd, 286 S. W., 468, where the Court defined what is meant by the bed of a stream; Landry v. Robison, 110 Texas, 295; and Welder v. State, 196 S. W., 877, Writ of Error refused; State v. Grubstake Investment Ass'n., (opinion delivered June 22, 1927).

We have this day determined that the State is clothed, as sovereign, with the power to determine the disposition to be made of the beds or channels of navigable streams belonging to the State. Anderson v. Polk, not yet reported. Of course, the State's power must be exercised without impairing rights already vested. But in so far as the validity of mineral permit No. 7224 is concerned, the case presents no question of impairment of vested rights. For, defendants admittedly had no rights other than as riparian owners of land bordering on the Clear Fork of the Brazos River. The judgment of the District Court expressly decreed that it should in no wise interfere with or bar any rights of the defendants as owners of riparian lands nor preclude them from hereafter asserting any such rights. So, we shall not undertake to define in this opinion the rights of riparian proprietors nor of the public in rivers or their beds. It is certainly the province of the Legislature to determine how the State shall discharge all the obligations resting upon it as owner of the river beds—including any minerals which may lie therein.

We conclude there was no error in the action of the District

Court in allowing plaintiffs to recover the river bed area in controversy, nor in establishing the validity of the mineral permit.

We find no basis in pleadings, proof, or the law for the trial court's award of an easement over and across all the lands of the defendants. Neither the pleadings, evidence, nor the judgment fix or describe any certain right of way. The judgment grants to plaintiffs a mere general right of ingress and egress over defendants' lands—whether contiguous or not—without qualification other than that plaintiffs' right be exercised so as to not unnecessarily injure defendants' lands and so as to not unnecessarily interfere with defendants' use of their lands.

The rule invoked by the plaintiffs to maintain their right to a way of necessity across defendants' lands was clearly stated by the Supreme Court of Massachusetts in these words: "The law presumes that one will not sell land to another without an understanding that the grantee shall have a legal right of access to it, if it is in the power of the grantor to give it, and it equally presumes an understanding of the parties that one selling a portion of his land shall have a legal right of access to the remainder over the part sold, if he can reach it in no other way. This presumption prevails over the ordinary covenants of a warranty deed." New York & N. E. R. Co. v. Board of Railroad Commissioners, 162 Mass., 83, 38 N. E., 27. The rule recognizing the grantor's implied reservation of a necessary right of way across the part of his land which he has conveyed seems to have been recognized in Texas in cases where the grantor was another than the sovereign. Railway v. Rowland, 70 Texas, 301; Holman v. Patterson, 78 S. W., 991.

However, one of the latest expressions of this Court, in refusing to recognize a claim of implied reservation by a grantor, was in an opinion of Mr. Justice Gaines, in which he used this significant language:

"There is much that commends them to favorable consideration in the remarks upon this question of Chief Justice Ryan, of the Supreme Court of Wisconsin: 'We may say, however, in passing, that it is always safest to let written contracts speak for themselves. This rule is often relaxed with doubtful expediency. Parties ought to make their own contracts complete. Alienations of land are or ought to be grave and deliberate transaction. Every conveyance should contain "the certainty of the thing granted" to the full extent of the grant. What may be expressed enlarging or restricting the grant in particular cases should not be left to implication. It is often difficult, as the cases show, to determine what shall be implied in convey-

ances by way of grant or reservation of easement; what parties who might have spoken shall be held to intend by their silence. And because "a deed shall be construed most strongly against the grantor," this view applies with great force against implied reservations in the servient estate conveyed by the owner of the dominant estate. Indeed, it is remarkable that the doctrine of implied grant of easement in the land of the grantor once rested very much on the principle that the grantor should not be heard to derogate from his grant (Howton v. Frearson, 8 Term Reports, 50) ; and yet the same doctrine has been extended to implied reservations to the grantor in what he conveys in direct derogation of his grant. On principle, therefore, we should be disinclined to enlarge or limit estates granted by implication of law further than a general·current of decisions might oblige us.' Dillman v. Hoffman, 38 Wis., 573." Smith v. Stevens, 81 Texas, 460, 461.

As we are still in accord with the view of the Wisconsin Supreme Court, we should be slow to extend this doctrine of implied reservation of way of necessity to cases where the unity of title on which it rests can be found only in ·the sovereign. Counsel for plaintiffs have cited no case where the doctrine has ben so extended.

Looking to the authorities, they seem rather harmonious in refusing to apply the doctrine where the tracts were under the same ownership only before title passed from the sovereign.

The Court of Appeal of California, in Bully Hill Copper Mining and Smelting Co. v. Bruson, 87 Pac., 238, said: "There is nothing in this record to show that the relation of grantor and grantee ever existed between the plaintiff and any of the defendants. The mere fact that all of the land was originally part of the public domain and hence owned by a common grantor cannot confer the peculiar right out of which a way of necessity arises.

We believe the reasons which forbid the application of the doctrine here invoked in behalf of the State and her permittees, are clearly stated in United States v. Rindge, 208 Fed. Rep., 619, as follows:

"The logical result of this contention is that a way is reserved by implication for the use of such persons over all land granted by the government to reach the remaining subdivisions when there is no other reasonable or convenient means of access, notwithstanding there is no such reservation in the grant, and there is no public law so providing. A doctrine so contrary to the general theory of the rights acquired by patentees of public

lands and guaranteed to private owners by the Constitution challenges attention. Its effect is strikingly apparent in the case at bar. The result of the government's position, if sustained, will be to divide the Malibu Ranch by what are in effect public highways into 10 or 12 different tracts, thus materially impairing its value and usefulness to the owner, and that without compensation. It is, in my judgment, very doubtful whether the doctrine of implied ways of necessity has any application to grants from the general government, under the public land laws. Pearne v. Coal Coke Co., 90 Tenn., 619, 18 S. W., 402; Bully Hill C. M. & S. Co. v. Bruson, 4 Cal. App., 180, 87 Pac., 237. If it exists at all, it can be invoked against the government and its grantees as well as in their favor. Hence every grantee of a portion of the public domain from the time the land laws were extended over the same and those succeeding to his title would have an implied right of way over the surrounding and adjacent public lands, and a junior grant thereof if necessary to reach his own land, and a junior grantee and his successors in interest would have such a way over a prior grant under similar circumstances simply because they derive title from a common source. The public domain is disposed of under general laws, and the rights conferred and reserved are defined by such laws, and rules and regulations made in pursuance thereof. If the sale or conveyance of one portion of such domain prevents access to another, it would seem to be a contingency which the government was bound to contemplate in making the conveyance. By public statute Congress has granted rights of way for the construction of highways over public lands not reserved for public use. Act of Congress July 26, 1866, c. 262, 14 Stat. at L., 253. Beyond this and the full protection of the title which it confers, it would seem that the government owes no duty or obligation and reserves to itself or its subquent grantees no interest in the land granted except such as may appear on the face of the grant or the law under which it was made, or be declared by a general statute in force at the time the interest of the grantee was acquired."

Jones on Easements, Section 301, discussing ways of necessity, "founded on implied grant or reservation," says: "The right does not exist in any case in favor of a grantee of the State over other lands belonging to the State." Then, the author adopts as the balance of the section the following excerpt from an opinion of the Supreme Court of Tennessee in Pearne v. Coal Creek Min., & Mfg. Co., 90 Tenn., 619, 627, 18 S. W., 404, to-wit: "By public statutes she provides for the stablishment and main-

tenance of public roads, penetrating every neighborhood and sufficiently numerous to meet the general wants of her citizens. Beyond this, and the full protection of the title conferred, she owes her grantees, as such, no duty or obligation. It would be runious to establish the precedent contended for, since by it every grantee from the earliest history of the State, and those who succeed to his title, would have an implied right of way over all surrounding and adjacent lands held under junior grants, even to the utmost limits of the State."

Of similar purport is the early opinion of the Supreme Court of Illinois in Wilcoxon v. McGhee, 12 Ill., 381.

This Court has strongly emphasized that strict necessity is the basis for any such right as that here asserted. The same necessity does not exist in the case of the sovereign as in the case of the individual landowner. As long as title remains in the State and as long as mineral development may be authorized for the benefit of the State and all her people, there can be no doubt that the State, in the exercise of the power of eminent domain in such mode as the Legislature may authorize, can obtain any and all reasonable rights of way. In Morgan v. Oliver, 98 Texas, 223, the Court, through Chief Justice Gaines, declared: "At common law every proprietor holds his property subject to the right of the sovereign to take it for public use." Of course, under Section 17, of Article 1, of the Texas Constitution, the proprietor must be compensated before his property is devoted to the use of the public. Travis County v. Trogdon, 88 Texas, 309; Bounds v. Kirven, 63 Texas, 159. It is not material here whether the Legislature has made proper provision for the exercise of the State's power of eminent domain. The existence of the power would seem to negative the strict necessity on which the implication of the reservation of the right of way by the State must be grounded. Alley v. Carleton, 29 Texas, 79.

However, even if defendants' land were held charged with the servitude of a way of necessity for the benefit of the lands of plaintiffs, we could not sustain the trial court's judgment establishing such way either on the pleadings or the proof.

We quote sufficient of the elementary rules governing the establishment of ways of necessity to show how impossible it is to sustain any such right as that which was sought by plaintiffs or that which was granted by the decree of the trial court.

Jones on Easement declares: "The way implied is a convenient way over some part of the grantor's surrounding land, and not a way in every part of it. It is not a right to go indiscriminately over any part of the land of the grantor. * * * If the

parties cannot agree upon the location of the undefined way, this may be determined in equity. * * * A right of way that is too indefinite for a determinate description cannot be established and protected by a court of chancery." Jones on Easements, Secs. 329, 354, citing Fox v. Pierce, 50 Mich., 504.

The Supreme Court of Maine says: "It would be idle to assert as matter of necessity a right to a forty-foot opening to a fifteen-foot passage way." White v. Bradley, 66 Maine, 263. Nevertheless, the right of way asserted and established in this case seems to cover an area miles in extent.

When a passage way was found to have been reserved, the New Hampshire Supreme Court pointed out that this did not authorize passing over all parts of the servient tract at pleasure. Gardner v. Webster, 64 N. H., 522.

As said in the head-note to Brice v. Randall, Md., 7 Gill & Johnson, 349; "When the owner of a large tract of land grants a portion of the soil, which is surrounded by his own land, the right of way incidental to the grantee's land, is to a convenient way over some part of the grantor's surrounding land, not in every part of it."

Plaintiffs having failed to plead or prove any right to a way of necessity, it follows that so much of the judgment of the trial court as established such a way as against the defendants who appealed from the judgment of the trial court, and as against the lands of such defendants must be reversed. The judgment of the Courts of Civil Appeals is reversed. The judgment of the District Court is reformed so as to vacate and eliminate so much thereof as establishes any easement in behalf of the State and its permittees, lessees, agents, servants, and employees, over and across the lands of the defendants A. A. Atkins, Jack Black, John Black, Will Black, Black Bros., R. F. Brown, and the Brown Oil Company, and, as reformed, the judgment of the District Court is affirmed. The costs of this writ of error are taxed against defendants in error, and all other costs of the appeal are taxed against the State and her co-plaintiffs in the trial court.

Chief Justice Cureton not sitting.