## FORT SMITH BRIDGE COMPANY *v.* HAWKINS.

Decided May 23, 1891.

1. *Municipal corporation—Taxation.*

A municipal corporation can levy no taxes, general or special, unless the power to do so be plainly and unmistakably conferred; under the statutes of this State no power is given to cities and towns to levy taxes upon property not situated within their corporate limits. (Mansf. Dig., sec. 896.)

2. *Corporate limits—Navigable river.*

Where a riparian owner upon a navigable stream, holding under grant from the United States, laid off his land into town lots and blocks, streets and alleys, extending to the river, and filed a map of it in the clerk's office, and the legislature incorporated the town of Van Buren, and declared its limits to be "the same metes and bounds as designated" on said map, the corporate limits extend to high-water mark only, and not to the middle thread of the stream.

APPEAL from *Crawford* Circuit Court in chancery. HUGH F. THOMASON, Judge.

*Clayton, Brizzolara* and *Forrester* for appellants.

1.  The first question involved in this case was decided in 13 S. W. Rep., 796.

2.  The boundary line of Crawford county extends to the middle of the main channel of the Arkansas river, but as to the town of Van Buren there is no statute defining its boundaries, which must be determined from the acts of incorporation and the map and plat of said town as recorded. Acts 1850, p. 81, sec. 1; Acts 1842, p. 172; Acts 1844, p. 136; 36 Ark., 166. The general acts of incorporation do not affect the corporate limits or boundaries. Gantt's Dig., ch. 72, sec. 3201; Mansf. Dig., ch. 29, secs. 729, 730; 27 Ark., 419; *ib.*, 467. The making and the recording of the plat was a dedication. 2 Dill. Mun. Corp. (4th ed.), secs. 628, 630, 636. The fact that a town is laid off on the banks of a navigable river is sufficient evidence of its extending to the river. 8 B. Mon. (Ky.), 232 *et seq.* The grant was from the United States, and the survey stops at the edge of the river. The plat defining the limits of a city is construed the same as grants by deed. 8 Frost, 196. The Arkansas river is meandered, and the survey runs only to the river bank. Lester's Land Laws, 714; 1 Woolr., 88. The common law doctrine is not applicable to such streams. Walker Chy. (Mich.), 168. Grants of lands upon navigable rivers from the United States extend only to the margin of the stream. Gould on Waters, secs. 76, 78, and note 5; 54 Am. Rep., 410; 71 Cal., 135; 1 U. S. St. at Large, 468, sec. 9; 2 *id.*, 235, sec. 17; U. S. Rev. St., sec. 2476; 7 Wall. (U. S.), 272; 2 Swan, 1; 75 Ill., 41; 7 Bissell, 201; 4 Iowa, 199; 12 How. (U. S.), 454; 32 Iowa, 106; 26 Kans., 682. And to high water mark only. 13 S. W. Rep., 931, and cases cited.

*Jesse Turner, Sr.* and *Nimrod Turman* for appellee.

1. The case of 53 Ark., 58, determines that the bridge should have bcen assessed by the assessor.

2. The Arkansas river is the south boundary of the city (Acts 1842, p. 172).   Van Buren is then a riparian proprietor, and holds to the middle of the Arkansas river, and the rule laid down in 53 Ark., 314, should be modified.  24 How., 41; 13 *id.*, 421; 27 S. C., 137; 121 Ill., 238; 3 Kent, Com., *p. 427, 13th ed.; 7 Wall., 272; 3 Wash., R. P., top pp. 353–4–5 and notes; L. C. Am. R. P., pp. 370–1–2, etc., vol. 4; 1 Dill. Mun. Corp., pp. 262–3, note 1 to 4th ed.; 6 Cowen, 518; 39 Miss., 100; 3 Scam., 510; 3 Sm. & M., 336 (Miss.); 3 Kent, *p. 428, note (d).  The common law, as laid down by Kent, Washburn and other text writers and as declared in the opinions just cited, has been recognized by a majority of the American States, and is sustained by a decided preponderance of authority.  Out of a vast number of decisions we cite the following, by States, viz.:

New Hampshire—See 54 N. H. 548, 28 N. H. 195, 14 N. H. 467, 2 N. H. 369; Connecticut—5 Conn. 388, 9 Conn., 38; Vermont—28 Vt. 257, 262; Maine—31 Me. 9, 50 Me. 479, 3 Greenl. 269, 7 Greenl. 273, 290; Massachusetts —5 Pick. 199, 22 Pick. 333, 9 Cush. 544; New York—83 N. Y. 178, 72 N. Y. 211, 68 N. Y. 246, 24 Wend. 451, 26 Wend. 404, 6 Cow. 518, 9 Paige 54; Ohio—3 Ohio 495, 16 Ohio 540, 36 Ohio 396; Illinois—(applying the common law rule to the Mississippi river)—3 Scam. 520, 5 Gil. 54, 47 Ill., 384, 49 Ill. 172, 51 Ill. 266, 54 Ill. 110, 75 Ill. 41, 82 Ill. 46, 179, 89 Ill. 334, 91 Ill. 515, 95 Ill. 84, 101 Ill. 46, 238, 108 Ill. 646, 123 Ill. 535, 124 Ill. 542; Mississippi—(applying the common law to the Mississippi river)—39 Miss. 100, also 3 S. & M. 366, 29 Miss. 21; Wisconsin—2 Wis. 308, 44 Wis. 295, 46 Wis. 237, 47 Wis. 314, 4 Wis. 486, 2 *id.*384, 4 Wis. 321, 13 Wis. 692, 16 Wis. 665, 17 Wis. 417, 509, 18 Wis. 118, 20 Wis. 425, 30 Wis. 61, 36 Wis. 50, 42 Wis. 203, *ib.* 214, *ib.* 248, *ib.* 233; Michigan— 8 Mich. 18, 10 Mich. 125, 1 Mich. 202, 18 Mich. 196, 19 Mich. 325, 26 Mich. 508, 28 Mich. 182, 30 Mich. 308, 31

Mich. 336, 41 Mich. 453, 466; Kentucky—3 Bush 266, 274,. 8 Bush 336; New Jersey—1 Halst. 1, 16 Peters 367, 1 Wall. Jr. 275, 14 How. Eq. 1, 8, 631, 32 N. J. 369; Delaware—2 Harr. (Del.) 489, 5 *id.* 325; Maryland—5 H. & J. 196, 1 Bland, Ch. 316, 3 *id.* 453, 1 Gill 430, 22 Md. 530, 537, 42 Md. 348, 2 Md. Ch. 485; Georgia—6 Ga. 130, 141, 18 Ga. 539, 30 Ga. 355, 4 Ga. 241; South Carolina— 4 Rich. 68, 27 S. C. 137. The common law doctrine has been recognized by this court in 25 Ark., 120; 39 *id.,* 403.

BATTLE, J. The object of this action is to enjoin the collection of the taxes which were levied by the city of Van Buren, for the years 1886, 1887 and 1888, upon the bridge of the Fort Smith and Van Buren Bridge Company. The bridge is across the Arkansas river, and one-half of it is in Crawford county, in this State, and is in the main line of the St. Louis and San Francisco Railway Company, and is used by that company in the operation of its trains. It was assessed for taxation for the years 1886, 1887 and 1888, by the state board of railroad commissioners as part of the roadbed of the railway company, and was valued by them for that purpose at $263,000. This valuation was added to and included in the assessment of the railway of the St. Louis and San Francisco Railway Company, and $3930 thereof, that is to say, of the valuation of the bridge, was apportioned and certified for taxation by Van Buren for the years named. The assessor of Crawford county also assessed the one half of the bridge lying in that county, for the same years, at $100,000. The portion of the valuation of the state board of railroad commissioners, which was apportioned to Van Buren, and the valuation of the assessor were entered and extended upon the tax books of Crawford county for each of said years, and a municipal tax of five mills on the dollar levied by the city of Van Buren was assessed and extended against the bridge on such apportionment and the valuation of the assessor on each of said books, and the books, with the taxes so extended, were placed in the hands.

of the tax collector of Crawford county, with a warrant to each of them attached authorizing him to collect the same. The taxes assessed against the bridge on the apportionment by the state board were paid. But the railway and bridge companies refused to pay the taxes assessed upon the valuation made by the assessor, and seek by this action tc restrain the collection of the same. They allege that the collection of them should be restrained because they say no part of the bridge is in the city of Van Buren. On the other hand the collector, the defendant in the action, avers that the entire one-half thereof, which is in the county of Crawford, is in that city. The court below held that so much of the bridge as is in the county of Crawford is within the city of Van Buren, and sustained the levy of taxes assessed against the same upon the valuation fixed by the assessor, and held that the taxes assessed and extended on the tax books according to the apportionment made by the state board were illegal, but held that the bridge company was entitled to a credit on the taxes found to be lawfully assessed against the bridge for the amount of the taxes so paid, and decreed accordingly; and plaintiffs appealed.

Since this court held in *Railway* v. *Williams*, 53 Ark., 58, that the bridge in question should be assessed for taxation by the assessors of the counties in which it is situate as the property of the bridge company, and not by the state board as the property of the St. Louis and San Francisco Railway Company, there is but one question in the case, and that is, Is the one-half of the bridge in Crawford county subject to taxation by the city of Van Buren?

Municipal corporations can levy no taxes, general or special, unless the power to do so be plainly and unmistakably conferred. The power must be given either in express words or by necessary or unmistakable implication. It cannot be deduced by doubtful inferences from other powers, or from any consideration of convenience or advantage. *Vance* v. *Little Rock*, 30 Ark., 439; 2 Dillon

1. Taxing power of municipal corporation.

on Municipal Corporations (4th ed.), secs. 763, 764, 786; 1 *ib.*, secs. 89–90.

The statutes of this State limit the right of a municipal corporation to levy taxes to the real and personal property within the limits of such corporation. Mansf. Dig., sec. 896. Was one-half of the bridge in question in the corporate limits of the city of Van Buren?

2. Corporate limits of riparian towns.        Van Buren is an incorporated town or city in Crawford county in this State. The boundary line of Crawford county between it and the county of Sebastian is the middle of the main channel of the Arkansas river. That river is navigable as far up as Van Buren, and beyond. The town is situate on the east bank of the river, on the north fractional half of section twenty-five, in township nine north, and in range thirty-two west. This tract of land originally belonged to Thompson and Drennon. They laid off the town on it, and caused a map of the town so laid off to be made and filed in the office of the county clerk of Crawford county in 1842. The town so laid off extended to the river. Along the bank of the river, the whole length of the town, is a strip of land marked on the map "reserved," which was not divided into lots and blocks, but nevertheless forms a part of the town. This reserve does not belong to the town, but, by an agreement with Thompson and Drennon, the town has been permitted to erect a wharf on it, and to collect wharfage from steamboats lying at such wharf.

The town was incorporated by acts of the General Assembly in 1842 and 1845. The last act declared its corporate limits to be the same metes and bounds as are designated on the plat of the town on record at the time it was enacted. Acts of 1842, pp. 172, 173; Acts of 1844–45, p. 136. The evidence clearly proves that the plat referred to in the last act was the map filed by Thompson and Drennon in 1842. The acts of the General Assembly of April 9, 1869, and of March 9, 1875, regulating the incorporation, organization and government of municipal corporations, made no change in the territorial limits of towns and cities

incorporated at the time of their enactment, but left them as they were. Gantt's Dig., secs. 3201–3202; Mansf. Dig., secs. 729–730.

The bridge of the Fort Smith and Van Buren Bridge Company was erected across the river; and one-half of it is in Crawford and the other half is in Sebastian county. A part of it extends over a portion of the strip of land marked on the map "reserved" and on to the block designated on the map as block 81.

In order to determine how much of the bridge is in Van Buren, it is necessary to ascertain its corporate limits on the Arkansas river. Is it high-water mark on the bank of the river in Crawford county, or is it low-water mark on said bank, or is it the middle or thread of the stream?

As a rule the same construction that is given to grants of land is given to statutes which prescribe the boundaries of incorporated territories. *Cold Spring* v. *Tolland*, 9 Cush., 492; 1 Dillon on Mun. Corporations (4th ed.), sec. 182, note 1, and cases cited. Following this rule courts have differed as to the location of the boundaries of such territories on rivers as they have as to like boundaries of grants of land. In those States where grants of land, bounded on fresh-water rivers, carry the title of the grantee to the soil to the middle of the stream, courts hold that like boundaries of incorporated towns and cities extend to the center of the river; while in other States, where grants of land bounded on navigable rivers, wherein the tide does not ebb and flow, carry the title of the grantee to low-water mark, courts hold that the boundaries of municipal corporations on such rivers extend to low-water mark and no further.

In *Cold Spring* v. *Tolland*, 9 Cush., *supra*, the court, following the rule stated, and saying that a grant of land, bounded on a stream not navigable, carries the exclusive right and title of the grantee to the center of the stream, unless the terms of the grant clearly denote the intention to stop at the edge or margin, and that this is so although the monuments are described as standing on the margin or bank of

the stream, held that a statute which made the west bank of Farmington river, a stream not navigable, a boundary of territory incorporated as the town of Tolland, constituted the center of the stream, and not the edge or margin, the true boundary line.

Announcing the same doctrine and following the same rule, the court, in *State* v. *Canterbury*, 8 Foster, 195, held,. that towns bounded by or on the Connecticut or Merrimac rivers, or by lines up or down the rivers, extend to the center of the rivers. In the course of its opinion, the court remarked : " We think there is much force in the suggestion of the counsel for the State, that the grants of towns to the proprietors, which are merely grants of land, would, of course, follow the ordinary rules of construction ; and it could hardly be reasonable to apply a different rule, when. the same land is incorporated into a town by a description entirely identical."

In *Jones* v. *Soulard*, 24 How., 41, the right to the land in controversy depended on the location of the eastern boundary of St. Louis. It appeared that the town of St. Louis. was incorporated in 1809, and that its eastern line as then incorporated was described as follows : " Thence," meaning from Sugar Loaf, " due east to the Mississippi ; from thence by the Mississippi to the first place mentioned." The question was, whether the eastern line of the corporation, as thus described, extended to the middle thread of the Mississippi river, or was it limited to the bank of the channel. Holding that grants of land bounded by fresh water rivers confer the proprietorship on the grantee to the center of the stream, notwithstanding the rivers are in fact navigable, the court held that the eastern line of the city was the middle thread of the Mississippi river. *State* ex rel. *Bridge Co.* v. *Columbia*, 27 S. C., 137.

In Pennsylvania it is well settled that, when a navigable river, which is held to be a public highway under the common law of that State, is made the boundary of a grant by the commonwealth, the title passes to low-water mark, but:

no further; and that "it is to small streams not navigable that the principle of *usque ad filum aquæ* applies." When the city of Wilkes-Barre was incorporated, the Susquehanna river, a navigable stream, was made its boundary on the northwest. In Gilchrist's Appeal, 109 Penn. St., 600, it appears that the city of Wilkes-Barre attempted to collect taxes on a body of coal land lying beneath the Susquehanna river. It was contended on the part of the city that its corporate limits extended to the middle or thread of the river. But the court, following the rule as settled in that State as to grants of land, held that they did not extend beyond low-water mark, and that the city had no right to impose taxes on the coal land lying outside of its territorial limits. *Johns* v. *Davidson*, 16 Penn. St., 512.

This court has never determined the river boundary of an incorporated town or city. But in *Railway* v. *Ramsey*, 53 Ark., 314, it held that "the owner of land on the margin of a navigable stream in this State, holding under a grant from the United States government, does not take *ad medium filum aquæ*, but to high-water mark." We see no good reason why the same rule should not govern in determining the boundaries of incorporated territories. The incorporation of territory, which has been conveyed to an individual, cannot change its boundary lines when the description of the same in the act of incorporation and the conveyance are identical. Upon principle and authority the same description defines the boundaries alike in both cases.

The rule applies in this case. The land on which Van Buren stands was originally held by Drennon and Thompson under a grant from the United States. They laid it off into town lots and blocks, streets and alleys, to the Arkansas river, and made a map of it as laid off, and filed it in the clerk's office. Before it was incorporated, the high-water mark of the river in Crawford county was the boundary line of the town on the side next to the river. In 1845 the legislature incorporated the town the second time, and declared its corporate limits to be "the same metes and

bounds as designated " on said map. The high-water mark was thereby made and still retained and has remained a boundary line of the incorporated territory.

So much of the bridge, therefore, as extends over the high-water mark in Crawford county is within the corporate limits of Van Buren. This part, with the approaches thereto, should have been separately assessed, as a part of the entire bridge, by the assessor of Crawford county for taxation by the city for the years 1886–7–8. The taxation of more than that for the municipal purposes of the city of Van Buren for the years mentioned was illegal. The city had no power to impose taxes on that part of the bridge which lay outside of its territorial limits.

The decree of the court below is, therefore, reversed, and this cause is remanded with instructions to the court to ascertain the value of so much of the bridge as is within the corporate limits of the city of Van Buren, at the time it was subject to be valued by the assessor for taxation for the years 1886–7–8, and the amount of taxes that would have been due the city had it been assessed at such valuation at said times and the taxes levied by the city for the years named had been assessed against such portion according to such valuation within the times prescribed by law, and to deduct therefrom the taxes paid the city on the part of the valuation of the bridge apportioned to the city by the state board of railroad commissioners; and, upon the payment by the bridge company of the balance remaining unpaid and of all the costs in this action, within a reasonable time to be fixed by the court, to perpetually enjoin and restrain the collection of the municipal taxes that were assessed against the one-half of the bridge on the assessment and valuation made by the assessor of Crawford county as before stated; and, in the event the amount ascertained to be due the city, and said costs, are not paid within such reasonable time, to dismiss the complaint of appellants; and, in the meantime and until such reasonable time shall expire, to make an order temporarily restraining the collection of the municipal

taxes that have been assessed against the one-half of the bridge as before stated; and that, in the event the court shall not be in session in time to restrain the collection, the judge thereof make an order that the temporary restraining order be issued by the clerk upon the terms the statute authorizes the issue of such orders.

The judgment will be entered here in favor of the appellee against appellants for the costs of this appeal.