ANDREW TRACY, PROSECUTOR, v. BOROUGH OF KEANS-BURG AND JAMES WYLIE, RECORDER, &c., RESPOND-ENTS.

Submitted July 5, 1923—Decided November 8, 1923.

1. The office of an exception in a deed or grant is to take out of the thing granted something that would otherwise pass.
2. In the "act to incorporate the borough of Keansburg in the county of Monmouth" (*Pamph. L.* 1917, *p.* 264) the territory was delimited by metes and bounds, after which the act contained this paragraph: "Save and excepting only all those areas and reservations of the federal government—in their entirety—known and designated as, &c., "same to be as now administered, with all right and easements, now in full force. to be specifically excepted from the operation of this act." *Held*, that the excepted land was not within the borough grant, and that the borough acquired no jurisdiction over it because of the subsequent abandonment thereof for federal purposes.
3. In the interpretation of public grants the grantee can take nothing not clearly given by the grant. In cases of doubt, the grant is construed in favor of the state and against the grantee.

---

On *certiorari.*

Before Justices TRENCHARD and PARKER.

For the prosecutor, *John S. Applegate.*

For the respondents, *Snyder & Roberts.*

The opinion of the court was delivered by

PARKER, J.   This writ brings up the conviction of the prosecutor in a summary proceeding before the recorder of the borough of Keansburg, in the county of Monmouth, of having violated the building code of that borough. The fundamental reason exploited before us is that the recorder was without jurisdiction, because the premises involved in the alleged violation are not, and were not then, situate within the borough limits. The solution of this question depends, not on any question of location or survey, but on the construction and effect of statutes.

The premises in question are situate on part of a tract of land, jurisdiction over which was ceded by this state to the United States for certain purposes long before the borough was created, and which land lay then within the lines of the township of Middletown. The act creating the borough (*Pamph. L.* 1917, *p.* 264) recognized this fact, and after describing the borough limits by a circumscribing description, the last course of which runs along the pierhead line in Raritan bay easterly and southerly to the beginning point in that line, including the lands under water embraced therein, adds the following significant exception:

"Save and excepting only all those areas and reservations of the federal government, department of commerce, bureau of lighthouses, in their entirety and with all buildings, structures, bulkheads, appurtenances and rights of way leading to same, known and designated as Waackaack Beacon Reservation and Point Comfort, sometimes called Bayside Beacon Reservation, same to be as now administered, with all right and easements now in full force, to be specifically excepted from the operation and effect of this act."

It appears that as to the particular tract of twenty-five seven hundred and thirty-four thousandths acres embracing the house lot in question, jurisdiction was ceded by the state to the federal government in 1893 under a statute passed in that year. *Comp. Stat. p.* 5385. But from the map in evidence it appears that this tract adjoins land also under the juris-

diction of the United States marked on the map "Point Comfort or Bayside Beacon," and acquired long before 1893, pursuant to the general provisions of such acts as *Pamph. L.* 1853, *p.* 384, and *Pamph. L.* 1873, *p.* 30. But the whole is plotted as a continuous tract on the map, the 1893 tract being marked, however, "United States Government Reservation." Subsequent to the incorporation of the borough the United States abandoned and sold the reservation to private parties and full state jurisdiction again attached. Keansburg now claims that this land is now borough territory.

Counsel have undertaken to limit the inquiry by a stipulation which reads as follows:

"It is stipulated between the parties hereto that this writ of *certiorari* brings up for review to the Supreme Court only the question of whether or not the tract of land wherein and upon which the defendant, Andrew Tracy, had caused to be erected a dwelling-house, for failure to obtain a builder's permit, for which he was convicted, was excluded as an exception and reservation from the boundaries of the borough of Keansburg, as designated in the statute under which said borough was incorporated, and if excluded that the said Andrew Tracy was unlawfully convicted."

It may be well to premise at this point that we do not concede that the jurisdiction of this court to affirm or reverse the conviction may be limited by stipulation of counsel to a selected point, to the exclusion of other questions of law raised by the record. It should be obvious that state questions of territory and jurisdiction may be involved and that the determination of these, if required to be made, should not depend on the mere construction of the reservation. 36 *Cyc.* 1285, 1286. But as the effect of the exception is, of course, involved, we proceed to examine it.

It seems indubitable that in construing the description of land in a statutory grant, the same rules of construction should obtain as are applicable in the case of a private conveyance, except, of course, that grants are to be construed favorably to the state, of which more presently. And in this branch of the law the elementary proposition is laid down

that the office of an exception is to take something out of
the thing granted that would otherwise pass.   18 C. J. 340,
341.   So that when the state, in chartering the borough of
Keansburg, defined the tract of land over which the borough
government should have jurisdiction by metes and bounds,
"save and excepting only all those areas and reservations—
in their entirety—known as," &c., "same to be as now admin-
istered, with all right and easements now in full force, to be
specifically excepted from the operations and effect of this
act," we think it is plain that as such "areas" would not
have passed in a deed, no jurisdiction over the same passed
by the charter of 1917.   *Graves* v. *Fancher,* 81 *N. J. Eq.* 407,
411; *Mitchell* v. *D'Olier,* 68 *N. J. L.* 375, 383.   So that on
this phase of the case it remains only to decide whether the
twenty-five-acre tract was included in the language of the
exception.   We have no doubt that it was.   True, the act of
1893 ceded jurisdiction for "fortifications, barracks and other
public buildings," &c., but the language of the exception in
the borough charter was comprehensive and evidently in-
tended to cover all land within the general description as
"now administered," and in view of the further fact that the
twenty-five-acre tract and the lighthouse tract proper were,
on the ground, one continuous tract, the mere inaccuracy of
the language should not defeat the manifest intent.   *Falsa
demonstratio non nocet.*

This seems to be dispositive of the precise question to which
the stipulation is limited; but it is suggested in the brief
for respondents that under the ruling in *State* v. *Morris,* 76
*N. J. L.* 222, the exception was a mere nullity, and hence
that upon sale of the land in question by the United States
and the consequent full resumption of state jurisdiction over
the same the general inclusion of the tract within the main
description should be effective to confer jurisdiction on the
borough, and the specific exception should be disregarded.
This seems outside the stipulation, but should nevertheless
be considered.

We do not read State *v.* Morris as holding that state acts
ceding jurisdiction to the nation are a nullity, but assuming

for present purposes that they are, so far as the authority of the national government is concerned, this would have no relevancy to the effect of an exception of land identified by description, out of a general grant to a borough. What was excepted was land as then occupied and administered by the United States of America; and there is nothing in the borough charter, express or implied, to indicate any intent as to what should become of the excepted territory in the unanticipated future contingency of the United States no longer needing it. A similar situation existed in *Freeholders of Cumberland* v. *Buck,* 79 *N. J. Eq.* 472, decided by Vice Chancellor Leaming. In that case a tract of land had been conveyed to the county "so long as the same should be used for the purposes hereinbefore mentioned (county offices) and no longer." This land was part of a larger tract which was afterwards conveyed by inclusive description, ending thus: "containing (after excepting out what was heretofore sold to the county) twenty-four square rods of land." The *habendum* read: "To have and to hold," &c., "except that part as before mentioned sold to the county." In time the county abandoned the use of the land conveyed to it; and the vice-chancellor held that this land reverted to the original grantor by such abandonment, and in reply to a claim that the abandonment nullified the exception said: "The exceptions are not of the *estate* conveyed to the county, but are of the *territory* conveyed to the county." We think this decision by a court of co-ordinate jurisdiction substantially in point, and have no hesitation in following it. Applied to the present case, its effect is that no jurisdiction over land within the exception was conferred, presently or prospectively, upon the borough, and that when such land was released from federal occupancy, it resumed the political status that it had before cession of jurisdiction to the national government.

This seems to accord with the well-settled rule that in the interpretation of public grants the grantee can take nothing not clearly given by the grant. In cases of doubt the grant is construed in favor of the state and most strongly against the grantee. *Water Commissioners of Jersey City* v. *Hudson*

*City*, 13 *N. J. Eq.* 420; *Newark Aqueduct Board* v. *Passaic*, 45 *Id.* 393, 399; *Attorney-General* v. *Newark Plank Road Co.*, 65 *N. J. L.* 51, 53.

From these considerations it results that the conviction must be set aside, with costs.