## AMERICAN LIBERTY OIL CO. v. STATE et al.

### No. 5550.

Court of Civil Appeals of Texas. Texarkana.

Feb. 7, 1939.

Rehearing Denied Feb. 23, 1939.

Locke, Locke, Stroud & Randolph and McGillivray Muse, all of Dallas, for appellant.

Oscar B. Jones, Dist. Atty., Charles Yonge, Asst. Dist. Atty., Bramlette, Levy & Dotson, and Frank C. Bolton, Jr., all of Longview, and Aubrey A. Wilson and Kermit Smith, both of Gladewater, for appellees.

WILLIAMS, Justice.

This is a suit against the American Liberty Oil Company, defendant below, to

recover taxes on realty with foreclosure of tax lien allegedly due to the State of Texas, Gregg County, Common School Districts Nos. 4, 7, and 8, and the Gladewater County Line Independent School District, on interests possessed by defendant in the Sabine River bed in Gregg County. The alleged taxable interest in the land is that interest acquired by Rhoads Drilling Company under the provisions of certain written contracts executed by the Board of Mineral Development of Texas for the exploration and development of the bed of such river for oil under the provisions of Sec. 8-A of Article 5421c, Vernon's Ann. Civil Statutes of Texas. Defendant urges in defense of the suit that the contracts evidenced by the written instruments executed by the Board were only contracts of hire and that the rights and interests granted to Rhoads Drilling Company, now owned by defendant, are such as do not come within the meaning of "real property" as defined for purposes of taxation by Article 7146, R.C.S. of 1925. Another defense urged by defendant presents the question whether the boundaries of the respective school districts include any of the land sought to be taxed, and if so, what part.

Trial was had to the court without a jury upon an agreed statement of facts, from which it appears: The contracts above mentioned are the identical instruments involved and construed by this court in Rhoads Drilling Co. v. State, 105 S.W. 2d 298; defendant is the assignee and present owner of all the rights and interests acquired by the drilling company; the taxes sought to be recovered are for 1933 and all subsequent years; defendant duly rendered for state and county taxes as personal property all rigs, machinery, pipe and other equipment situated upon the river bed described by metes and bounds in the pleadings, and has paid all such taxes when due; defendant has refused to render any interest in the beds as realty; but the respective assessors have assessed to defendant as real property this interest so acquired from the state and placed the assessment upon the tax rolls for Gregg County and the respective school districts. Other facts agreed upon appear later. From a judgment for the full amount of taxes, penalties, interest and attorney fees sued for, defendant has appealed. In determining the amount of taxes respectively due the school districts, the court fixed the middle of the bed of Sabine River as the boundary line between districts on opposite sides of the river.

■ In Rhoads Drilling Co. v. State, supra, the defendant in that cause urged the same defense as here, that the rights and interest so acquired under the contracts executed by the Board of Mineral Development is not taxable as realty. In that opinion, clauses pertinent to this issue are quoted and fully discussed by Chief Justice Johnson of this Court. The contracts here involved are the identical instruments. After an exhaustive examination of this question this court reached the conclusion that the contracts were of that character known as an oil and gas lease, and conveyed a leasehold estate in realty and therefore subject to taxation as realty. After further examination of the question we respectfully adhere to this former opinion and holding.

■ We next consider what part, if any, of the bed of Sabine River described in the pleading is situated within the respective school districts. It is an essential requirement that the realty sought to be taxed by a school district comprising only a portion of a county be situated within the boundaries of such district. Miller v. Crawford School Dist., 26 Tex.Civ.App. 495, 63 S.W. 894, cited with approval in Broocks v. State, Tex.Civ.App., 41 S.W. 2d 714; and Denman v. State, Tex.Civ. App., 85 S.W.2d 252; Camp v. Hawley School Dist., Tex.Civ.App., 150 S.W. 486, writ refused; Trustees of Dover Common School Dist. v. Dawson School Dist., Tex. Civ.App., 223 S.W. 556; Chicago B. & Q. R. Co. v. Cass County, 51 Neb. 369, 70 N. W. 955; Article 8, Sec. 11, Constitution of Texas, Vernon's Ann.Civ.St.

The record is absent any evidence which discloses the boundaries of common school districts Nos. 4 and 7, and litigants agree that the judgment awarded in behalf of these two districts should be reversed and remanded.

Defendant concedes that part of the Sabine River bed which bisects the Gladewater County Line Independent School District in an easterly-westerly course is situated within the territorial limits or boundaries of this district. But defendant contends that the area of the bed of Sabine River which maintains a northerly-southerly course situated between the independent school district on its west and Common School District No. 8 to the east of this river and that part of the river bed situated

adjacent to the southern boundary of Common School District No. 8 is not situated within the boundaries of either district. That part of the boundary description of the independent school district pertinent to the proposition presented reads: "* * * Thence down said creek (Prairie Creek) with its meandering (in an easterly direction) to the Sabine River; Thence up said river with its meander to the most S. E. corner of the Gladewater Independent School District, which original district is shown in Minute Book E pages 198 to 206 of Gregg County."

That part of the description of the boundaries of Common School District No. 8 pertinent here reads: "* * * Thence Easterly along the South line of P. McAnally survey to its most Westerly Southwest corner of the North bank of the Sabine River; Thence following the North bank of said river with its meanders along the South and West lines of the Francis W. Johnson survey to a point on the river at the Southwest corner of the L. S. Fisher tract in said Johnson survey; Thence Northeasterly." See State v. Atlantic Oil Producing Co., Tex.Civ.App., 110 S.W.2d 953, for plot of said Johnson survey.

It is to be observed that neither of above boundary descriptions crosses Sabine River and does not by any specific call therein include Sabine River or any part of the river.

■ This brings us to the construction of boundaries of a school district bordering upon streams in Texas. School districts are local public corporations of the same general character as municipal corporations. They are quasi-municipal corporations. Love v. City of Dallas, 120 Tex. 351, 40 S.W.2d 20; Hatcher v. State, 125 Tex. 84, 81 S.W.2d 499, 98 A.L.R. 1213; Thompson v. Elmo Independent School Dist., Tex.Civ.App., 269 S.W. 868. In McQuillin on Municipal Corporations (2d Ed.) Vol. 1, Sec. 262, it is stated: "The rules of construction as to boundaries of municipal corporations bordering on navigable or non-navigable water are the same as are applicable to a description in a grant of land so situated to an individual." To the same effect see: 19 R.C.L. p. 699, and authorities cited under footnote No. 6; 43 Cor.Jur. p. 107, and cases cited under footnote No. 58; City of Covington v. State, Tax Comm., 231 Ky. 606, 21 S.W. 2d 1010; Tracey v. Borough of Keansburg, 99 N.J.L. 35, 122 A. 536; Perkins v. Oxford, 66 Me. 545; Ft. Smith & Van Buren Bridge Co. v. Hawkins, 54 Ark. 509, 16 S.W. 565, 12 L.R.A. 487.

■ Article 5302, R.C.S. of Texas enacted in 1837, provides: "* * * All streams so far as they retain an average width of thirty feet from the mouth up shall be considered navigable streams within the meaning hereof, * * *." Sabine River retains this width within the area here involved, and as such is declared to be navigable by virtue of this statute.

■ In City of Austin v. Hall, 93 Tex. 591, 597, 57 S.W. 563, 564, the Supreme Court in construing the title and rights of abutting landowners upon a stream declared navigable under the provisions of Article 5302, supra, said: "The first part of the article provides for the location of lands upon waters which are navigable according to the general rule of decision on that subject. The consequences of such a location would be that the grantee would take title only to the water line of the navigable stream, and the title of the bed of the stream would remain in the state." This opinion, together with others, is cited with approval in State v. Black Bros., 116 Tex. 615, 297 S.W. 213, 217, 53 A.L.R. 1181, wherein the Supreme Court concluded that the river bed of such a navigable stream formed no part of an adjacent survey bounded on such a stream, stating "that proprietors of riparian lands on a stream declared navigable by the act of 1837 of the Congress of the republic, under patents issued subsequent to the passage of the act, had title only to the water line of the stream, since the state reserved the title to the bed of the stream." State v. Grubstake Investment Ass'n, 117 Tex. 53, 297 S.W. 202. The enactment of Section 8-A of Article 5421c, supra, by the Legislature of this State and the lease of the river bed under its provisions is in recognition of the fact that the title to the beds of navigable streams is reserved in the State, and the title of abutting landowners upon such a stream extends only to the waterline. Legislative recognition that the boundary lines of the counties of Texas running with navigable streams extend only to the banks of navigable streams is found in the enactment of Articles 196 and 202, C.C.P.; and Art. 1996, R.C.S.

■ The boundary of Common School District No. 8 having called for the north

1110

bank of Sabine River as its south boundary line and said river for its west boundary line, and the Gladewater County Line Independent School District having called for said river as its eastern boundary line, and said river having been declared a navigable stream, we conclude, under the rules of construction above stated and the decisions of the courts of this state, that the bed of such river within the above area is not within the territorial limits of either school district and "not subject to the school tax sought to be recovered."

Article 2741 and subsequent articles in Chap. 13, Title 49, R.C.S. of Texas, 1925, provide how the respective counties shall be subdivided into school districts and detail the various methods. If the realty here involved is to be included within the territorial limits of any school district, or to be placed within the limits of a particular district, the same should be done in the manner prescribed by our Constitution and the statutes of Texas, and not by judicial legislation.

The schedule of the amount of taxes claimed to be due the respective taxing units contingent on the disposition of the propositions here advanced have been agreed upon. Accordingly, the decree granting a recovery in behalf of Common School District No. 4 and Common School District No. 7 is reversed and remanded; that part granting a recovery in behalf of Common School District No. 8 is reversed and judgment is here rendered that such district take nothing by this suit; and judgment is here rendered that plaintiff, The State of Texas, in its own behalf and for the use and benefit of Gregg County, Texas, recover of defendant the sum of $17,421.09, together with the further sum of $2,615.72 as penalties and interest. Further, the amount of said judgment in behalf of Gladewater County Line Independent School District and Aubrey A. Wilson and Kermit Smith, attorneys, is here modified and reduced and judgment here rendered that said district recover of defendant the sum of $5,372.72, and Aubrey A. Wilson and Kermit Smith recover jointly as attorney fees of defendant the further sum of $537.27. In all other respects the provisions in said judgment are affirmed.

The judgment is modified and affirmed in part; reversed and remanded in part; and reversed and rendered in part.