2&3



# THE ATTORNEY GENERAL
## OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN, TEXAS

October 13, 1949

Hon. Dorman Nickels
County Attorney
Wharton County
Wharton, Texas

Opinion No. V-935.

Re: Correct method of assessing
taxes on royalty interests in
a unitized oil and gas produc-
tion unit which is located in
two school districts.

Dear Sir:

You request our opinion on the following question:

"Where landowners have executed mineral leases
with pooling agents and the production unit has been
subsequently formed and operated, what is the correct
way to assess for taxes the royalty interest, and the
correct method to allocate the taxes among school dis-
tricts where the production unit is located in two school
districts?"

In connection with your letter request you submitted a
brief in which you give us the following facts:

"The Chicago Corporation is now the operator of
a unitized oil, gas and mineral production unit in Whar-
ton County, said operator holding said several leases
from various land owners. This unit comprises 3693.42
acres. The pooling clause in the various leases is here
quoted:

'Lessee is hereby given the right and power
to pool or combine the land covered by this
lease or any portion thereof with any other
land, lease or leases when in lessee's judg-
ment it is necessary or advisable to do so
in order to properly develop and operate said
premises, provided that no unit so created
shall exceed 3700 acres in area. If produc-
tion is found on the pooled acreage, it shall
be treated as if production is had from this
lease, whether the well or wells be located
on the premises covered by this lease or not.
In lieu of the royalty elsewhere herein spec-
ified, lessors shall receive on production

204

from a unit so pooled only such portion of
the royalty stipulated herein as the amount
of his acreage placed in the unit or his roy-
alty interest therein bears to the total acre-
age so pooled in the particular unit involved.'

"The unit lies partly in Hungerford Common
School District No. 25 and partly in the East Bernard
Independent School District. The acreage of the lease
is split between the two districts in the following per-
centages: 35% thereof lies in the East Bernard District
and 65% thereof lies in the Hungerford District. One
dry hole has been drilled on a portion of said unit lying
in the East Bernard Independent School District and
three producing gas wells have been brought in on that
portion of the unit lease lying in Hungerford Common
School District No. 25. These three producing gas wells
have been valued for ad valorem taxation purposes by
petroleum engineers employed by Wharton County and
the value fixed on the unitized lease has been fixed at
approximately $100,000.00. The Tax Assessor and Col-
lector of Wharton County in assessing and collecting
taxes for common school districts has levied and as-
sessed taxes on the unit as a whole and has apportioned
65% thereof to the Hungerford School District which is
the percentage of acreage lying in that district. The
Tax Assessor and Collector of the East Bernard School
District has not heretofore levied and assessed any
taxes on said unit, but is attempting to do so for tax
year 1949. The Tax Assessor and Collector of Whar-
ton County, Texas, arrives at the tax on each individ-
ual tract in the unit by first arriving at the value of the
individual tract by determining the proportion of the
total value for the unit allocable to the particular tract,
the value fixed thereon being a value determined by the
proportion the tract's acreage bears to the acreage of
the whole unit. He then levies and assesses taxes for
the Hungerford District against each tract on the basis
of 65% of the value of each tract."

Article 7146, V.C.S., provides:

"Real property for the purpose of taxation, shall
be construed to include the land itself, whether laid out
in town lots or otherwise, and all buildings, structures
and improvements, or other fixtures of whatsoever kind
thereon, and all the rights and privileges belonging or
in anywise appertaining thereto, and all mines, miner-
als, quarries and fossils in and under the same."

It has been settled by the decisions of this State that under an oil and gas lease contract reserving a royalty interest, both the leasehold estate and the reserved royalty interest constitute real property. Sheppard v. Stanolind Oil and Gas Co., 125 S.W. 2d 643 (Tex. Civ. App. 1939, error ref.); Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021 (1934).

It is fundamental that the jurisdiction of a school district to tax real estate is limited to the property lying within its boundaries. American Liberty Oil Co. v. State, 125 S.W.2d 1107 (Tex. Civ. App. 1939); 40 Tex. Jur. 39, Taxation, Sec. 23.

The execution of oil and gas leases with a clause authorizing the lessees to form a unitized production unit and the subsequent creation by the lessees of such unit have the legal effect of making the individual royalty owners joint owners of all the royalty in such unit. As stated by the court in Brown v. Smith, 141 Tex. 425, 174 S.W.2d 43, 46 (1943):

> "An oil and gas lease jointly executed by the owners of two or more tracts of land owned in severalty, with provision for pooling or sharing, on the basis of acreage, the royalties from oil or gas produced anywhere on the leased land, has the effect of vesting all of the lessors, at least during the life of the lease, 'with joint ownership of the royalty earned from all the land in such block'. Veal v. Thomason, 138 Tex. 341, 349, 159 S.W.2d 472, 476. The lease so executed is a conveyance by each lessor to each of the other lessors of an undivided interest in the royalties. Lusk v. Green, 114 Okl. 113, 245 P. 636. The joint ownership of the royalty interest in all of the land included in such lease is created by the action of the several land owners in joining in the execution of the lease." Citing French v. George, 159 S.W.2d 556 (Tex. Civ. App. 1942, error ref.).

Although a taxpayer may own adjoining tracts of land, or interests therein, the tracts or interests in the various tracts should be separately valued and assessed for ad valorem taxation, when rendered as separate tracts by the taxpayer. Electra Independent School District v. Waggoner, 140 Tex. 428, 168 S.W.2d 645 (1943). State v. Baker, 49 Tex. 763 (1878).

It follows from the above authorities that after unitization each royalty owner within the unitized block owns an undivided royalty interest in each and every tract within the block in the proportion that the number of acres contained in the land he owned in fee bears to the total acreage in the entire unit, and that each royalty owner should be separately assessed for ad valorem taxes on

the undivided royalty interest owned by him in each tract, when the taxpayer renders same in separate tracts.

For example, we have a pooled unit aggregating 2,400 acres. 1,600 acres lie within the boundaries of Common School District No. 1. 800 acres lie within the boundaries of X Independent School District. Landowner A owns 600 acres of land within such unit, 200 acres of which lie within the X Independent School District and 400 acres of which lie within the boundaries of Common School District No. 1. Landowner B owns 600 acres which lie within the boundaries of X Independent School District. Landowner C owns 1,200 acres which lie wholly within the boundaries of Common School District No. 1. Landowner A after the formation of the pooling unit becomes the owner of 1/4 of the 1/8 royalty interest in each tract contained in the unit. This interest would amount to a 1/32 royalty interest. The X Independent School District Tax Assessor should assess against A his interest in the 200 acres which lie within the boundaries of the X Independent School District, which interest would include his 1/32 undivided royalty interest and would exclude the 7/8 working interest and the other 3/32 royalty interests. Such tax assessor should then assess against A under a separate assessment the 1/32 royalty interest of landowner A in the 600-acre tract owned by landowner B. Likewise, such tax assessor should separately assess against landowners B and C all their respective interests in the 200 and 600 acre tracts that lie within the boundaries of such independent school district. Likewise, the county tax assessor and collector should assess against landowner A in behalf of Common School District No. 1 the interest of A in the 400 acres of the 600-acre tract owned by landowner A which lie within the boundaries of such school district, and should assess under a separate assessment the undivided 1/32 royalty interest of A in the 1,200-acre tract owned by landowner C. Such county tax collector should likewise then separately assess against landowners B and C in behalf of such Common School District No. 1 their respective interests in the 400 and 1,200 acre tracts which lie within the boundaries of such district. Such county tax collector, in behalf of the county and the other taxing units, if any (other than the school districts), should then likewise separately assess against landowners A, B and C their respective interests in each of the tracts within such production unit.

During the life of such leases and production unit, it necessarily follows that the royalty interest per acre under each and every tract within such unit will be of the same value, even though a dry hole is drilled on one or more tracts and production is had on the others. In our example as given above, if the full 1/8 royalty interest in the 2,400-acre unit is of the taxable value of $72,000.00, then each royalty acre (the full 1/8 royalty in one acre) would be of the value of $30.00. Landowner A's 1/32 royalty interest in the 200 acres in X Independent School District would amount to 50 royalty

acres and have a value of $1,500.00. Likewise A's 1/32 royalty interest in the 600-acre tract owned by landowner B would have a value of $4,500.00, and A's 1/32 royalty interest in the 1,200-acre tract owned by landowner C would have a value of $9,000.00. Likewise, A's 1/32 royalty interest in the 400 acres of his 600-acre tract lying within Common School District No. 1 would have a value of $3,000.00. Also, according to our example, landowner B would own an undivided 1/32 royalty interest in each tract within such pool. Landowner C would own an undivided 2/32 royalty interest in each tract in such pool.

In our example given above, if landowners A, B, and C, or any one or more of them, render to the various taxing authorities their royalty interests in the pool as a whole, then the tax assessor would have the authority to assess against such taxpayers as a whole their entire royalty interests lying within the boundaries of the taxing authority. For example, if taxpayer A renders to the X Independent School District tax assessor his 200 acres that lie within X Independent School District, less the 8/8 mineral interest, and then renders to such tax assessor his undivided 1/32 royalty interest in the 800 acres of such pool that lie within the boundaries of X Independent School District, then the tax assessor for such district could make a valid assessment accordingly. Likewise taxpayer A could render to the county tax assessor-collector his 600-acre tract, less the 8/8 mineral interest, and then render to him his undivided 1/32 royalty interest in the 2,400-acre unit as a whole; and such tax collector then could make a valid assessment for all taxing units, by assessing in behalf of Common School District No. 1 the 1,600 acres that lie within the boundaries thereof and then assessing in behalf of the county and the other taxing authorities for which he assesses and collects taxes, the undivided 1/32 royalty interest of A in the 2,400 acres as a whole.

## SUMMARY

The execution of oil and gas leases with a clause authorizing the lessees to form a unitized production unit and the subsequent creation by the lessees of such unit have the legal effect of making the individual royalty owners joint owners of all the royalty in such unit. Veal v. Thomason, 138 Tex. 341, 349, 159 S.W.2d 472, 476. The jurisdiction of a school district to tax real estate is limited to the property lying within its boundaries. 40 Tex. Jur. 39, Taxation, Sec. 23. Each royalty owner in a unitized production block should be separately assessed for his undivided interest in each separate tract in such unit, when separately rendered.

Hon. Dorman Nickels, Page 6 (V-935)

Electra Independent School District v. Waggoner, 140
Tex. 483, 168 S.W.2d 645.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *W. V. Geppert*

W. V. Geppert
Assistant

WVG/mwb

APPROVED

*Joe R. Greenhill*

FIRST ASSISTANT
ATTORNEY GENERAL